# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DAMON SIMPSON, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 15-0507-CV-W-RK-P |
| IAN WALLACE, | ) |
|       Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Southeast Correctional Center in Charleston, Missouri has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 convictions and 2010 sentences for first-degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. 9-5. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied following an evidentiary hearing (Doc. 9-6, pp. 67-71) and that denial was affirmed on appeal therefrom (Doc. 9-9).

### Statement of Facts

In affirming Petitioner's convictions, the Missouri Court of Appeals, Western District, set forth the following facts:

> [Simpson] admits that he murdered Stevie Green. On the night of the murder, Simpson received a telephone call from Kalven Canady, who told Simpson that he had "got into it with some guy up the street" and that he needed Simpson to "come up and holler at him," meaning shoot him. Simpson told Canady that he did not have a gun. Canady then brought Simpson a gun. Canady told Simpson that Green was sitting in a car in a driveway with a woman named Tina. Canady wanted Simpson to walk to where Green's car was parked,

approach the car quickly, and shoot Green before Green could defend himself. Canady also told Simpson to make it look like a robbery by taking Green's money and jewelry.

Accompanied by his girlfriend's son, who came to serve as a lookout, Simpson left his house and walked to where Green's car was located. He approached the car and shot Green three times. Simpson told a female passenger (presumably "Tina") to get out of the car, which she did. Simpson pushed Green over, got in the car with his girlfriend's son, and drove away. Soon thereafter, Simpson parked the car, stole Green's money and jewelry, and walked home.

Later, Canady met Simpson at Simpson's house and took the gun and the clothes that Simpson and his girlfriend's son had worn during the shooting. Canady also took Green's jewelry and some of the money that Simpson had stolen.

The State charged Simpson with murder in the first degree, section 565.020, and armed criminal action, section 571.015. The jury found Simpson guilty . . . .

Doc. 9-5, p 5 (alterations added).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2

## Discussion

Petitioner raises six grounds for relief:[2] (1) there was insufficient evidence to support his convictions; (2) trial counsel was ineffective for preventing Petitioner from testifying in his own defense; (3) trial counsel was ineffective for failing to interview and call Nigel Davis as a witness at trial; (4) post-conviction counsel was ineffective for failing to raise a claim that Petitioner's convictions amount to double jeopardy; (5) direct appeal counsel was ineffective for failing to raise a claim that the trial court erred in failing to suppress Petitioner's statements to police; and (6) post-conviction counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to raise a *Brady*[3] claim in the motion for new trial. Doc. 1, pp. 5-10; Doc. 10, pp. 2-3. Respondent contends that Grounds 1 and 2 are without merit and that Grounds 3, 4, 5 and 6 are procedurally defaulted. Doc. 9, pp. 15-18; Doc. 18, pp. 2-3, 5-6.

### *I. Grounds 3, 4, 5, and 6 are procedurally defaulted.*

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan,* 54 F.3d at 1381.

---

[2] This Court's October 14, 2015, Order granted Petitioner's motion to supplement petition and indicated that this case would proceed on Petitioner's original petition and the two supplemental grounds for relief raised in Petitioner's motion to supplement petition. Doc. 19.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Although Petitioner raised Ground 3 in his amended motion for post-conviction relief, he failed to raise it in his post-conviction appeal. Doc. 9-7. Petitioner did not raise Grounds 4, 5, or 6 in his initial post-conviction proceeding or on appeal therefrom. Doc. 9-6, pp. 25-45. Consequently, Grounds 3, 4, 5, and 6 are procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri Courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner alleges that his procedurally default was caused by post-conviction counsel's ineffective assistance under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Doc. 1, p. 11. In *Martinez*, the United States Supreme Court recognized that ineffective assistance of post-conviction counsel could provide cause for a failure to raise a claim of ineffective assistance of trial counsel in an initial post-conviction proceeding. *Id.* at 1319-21. Under *Martinez*, a petitioner "may establish cause for a procedural default . . . in two circumstances: where the state courts did not appoint counsel in the [initial post-conviction] proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the [initial post-conviction] proceeding . . . was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984)." *Martinez*, 132 S. Ct. at 1312. "Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Furthermore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial

4

one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." *Martinez*, 132 S. Ct. at 1318.

As to Ground 3, because *Martinez* only applies to excuse default at an initial post-conviction proceeding, *Martinez* cannot excuse Petitioner's default of Ground 3 on post-conviction appeal. *Arnold v. Dormire*, 675 F. 3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support, however, for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause."); *see also Coleman v. Thompson*, 501 U.S. 722, 752-57 (1990) (holding that ineffective assistance of post-conviction appeal counsel does not constitute legally sufficient cause permitting a claim to be raised in federal court).

As to Grounds 4-6, because *Martinez* only applies to procedurally defaulted claims of ineffective assistance of trial counsel, *Martinez* cannot excuse the procedural default of Petitioner's claims of ineffective assistance of post-conviction and direct appeal counsel set forth in Grounds 4-6. *See Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014) (declining to extend *Martinez* to claims alleging ineffective assistance of appellate counsel and trial court error); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Even if *Martinez* could provide cause for Petitioner's procedural default of Grounds 4-6, the record of Petitioner's post-conviction proceedings, including Petitioner's amended post-conviction motion, establishes that post-conviction counsel performed a full review of Petitioner's case and was familiar with the evidence presented at trial and the relevant legal issues. Doc. 9-6, pp. 25-45. Accordingly, Petitioner fails to establish that post-conviction counsel's decision to raise certain issues in the amended post-conviction motion and omit others

5

was not a reasonable exercise of professional judgment.  Therefore, in light of the presumption that post-conviction counsel acted reasonably, Petitioner fails to show that post-conviction counsel provided ineffective assistance by not asserting the claims underlying Grounds 4-6.  Furthermore, even if Petitioner could show ineffective assistance of post-conviction counsel, he still fails to establish cause under *Martinez* because Petitioner's underlying claims do not allege "substantial" claims of ineffective assistance of trial counsel as required under the second prong of *Martinez*.

Consequently, Petitioner fails to assert cause for his procedural default of Grounds 3, 4, 5, and 6.  Petitioner fails also to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered.  *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (Petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), *cert. denied,* 549 U.S. 1036 (2006).  As a result, Grounds 3, 4, 5, and 6 are procedurally defaulted and will be denied.

### *II. Ground 1 is without merit.*

In Ground 1, Petitioner asserts that there was insufficient evidence to support his convictions.  Doc. 1, p. 5.  Claims of insufficient evidence to support a verdict face "a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012).  The first layer of deference is on direct appeal, where "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Id.* (quoting *Cavazos v. Smith,* 565 U.S. 1 (2011)).  A second layer of deference then applies on habeas review, where "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence

6

challenge simply because the federal court disagrees with the state court." *Id.* Rather, "[t]he federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.*

The Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> "A person commits murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1 (emphasis added). Simpson challenges the sufficiency of the "deliberation" element.
>
> > The element of deliberation may be proven from the circumstances surrounding the crime. Deliberation requires only a brief moment of "cool reflection" and may be inferred from the fact that a defendant had the opportunity to terminate an attack after it began. While the evidence of multiple wounds is not conclusive, numerous wounds or repeated blows may support an inference of deliberation.
>
> *State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002) (footnotes omitted) . . . .
>
> Here, there was overwhelming evidence of deliberation. Simpson and Canady discussed the plan to kill Green in advance. After their discussion, Simpson had to wait for Canady to bring him the gun. Simpson then elicited the help of his girlfriend's son to serve as a lookout.
>
> After receiving the gun from Canady, Simpson walked to where Canady had said Green's car was located, and he shot Green, not once, but three times. Then, as Canady had instructed, Simpson attempted to make it appear as though a robbery had occurred by driving the car away and stealing Green's money and jewelry, and then Simpson left the scene. Simpson later rendezvoused with Canady at Simpson's house, where Canady, presumably with the intention of concealing evidence of the crime, retrieved the gun, Green's jewelry, and the clothes Simpson had worn during the murder. From this evidence, a reasonable juror could have concluded, beyond a reasonable doubt that Simpson coolly reflected on his actions. Therefore, the State adduced sufficient evidence of the deliberation element of first-degree murder. *See Cole*, 71 S.W.3d at 169.

Doc. 9-5, pp. 6-8.

The Missouri Court of Appeals' resolution of Ground 1 is not objectively unreasonable. In his reply, Petitioner asserts that, because Petitioner's statement to police "simply shows that he shot the victim at Mr. Canady's request[,]" . . . "there was no evidence that the Petitioner or

7

Mr. Canady, coolly reflected on whether such a shooting would cause the victim's death." Doc. 21, p. 2. This assertion is insufficient to establish that the state court findings are objectively unreasonable. Instead, the state appellate court reasonably applied the correct standard before determining that the jury could have concluded beyond a reasonable doubt from the evidence presented at trial that Petitioner deliberated prior to shooting the victim. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that conclusion." *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002), *cert. denied*, 537 U.S. 886 (2002) (citing *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)).

Because the state court's determinations as to Ground 1 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 1 will be denied.

### *III. Ground 2 is without merit.*

In Ground 2, Petitioner alleges that trial counsel was ineffective for preventing Petitioner from testifying in his own defense at trial. Doc. 1, pp. 6. In order for petitioner to successfully assert a claim for ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the

8

deficient performance" actually prejudiced him. *Strickland*, 466 U.S. at 687-88. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the prejudice prong, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Western District, set forth the *Strickland* standard and denied Ground 2 as follows:

> The decision to testify is a defendant's personal right and "cannot be made by counsel." [*Blair v. State*, 402 S.W.3d 131, 139 (Mo. App. W.D. 2013)]. (internal quotation marks and citation omitted). However, "[a]lthough the decision to testify rests solely with the defendant, [he] is entitled to receive reasonably competent advice" to make this decision. *Id*. (internal quotation marks and citation omitted). Furthermore, "trial counsel's advice whether to testify is [generally] a matter of trial strategy[] and does not constitute a ground for post-conviction relief, absent exceptional circumstances." *Id*. (internal quotation marks and citation omitted).
>
> Mr. Simpson waived his right to testify at trial during the following exchange:
>
> Q (The Court): Mr. Simpson, you heard [trial counsel] indicate to me that the defense would present no evidence and that means – indicates to me that you wish not to testify; is that correct?
>
> A (Mr. Simpson): Yes, sir.

9

Q: I think you had the same inclination last time we tried this case, that you did reasons for doing so are the same this time as the last time; is that correct?

A: Yes, sir.

Q: You've done that after giving it full consideration; is that right?

A: Yes.

Q: And after having -- I don't want to know what you've talked about, but you've had enough time to talk with your attorneys about it and any family members or anyone you deem important to talk to about it, and you have made the decision on your own not to testify?

A: That's correct.

Q: And you feel that decision is in your best interest; is that correct?

A: Yes.

Q: And that's the way you want to proceed; is that correct?

A: Being advised by my attorney that's in my best interest.

Q: And given that you considered that and decided not to testify; is that right?

A: Yes, sir.

Q: And you understand it's your right and your right alone? Do you understand that?

A: Yes, sir.

Q: It's a decision you need to make on your own. Do you understand that?

A: Yes, sir.

Q: But you have taken into consideration all the advice from counsel and anyone else you need to talk to about this, and your own decision is to not testify?

A: Yes.

10

Q: And you're comfortable with that decision, correct?

A: Yes, sir.

During the post-conviction evidentiary hearing, Mr. Simpson testified that he had lied about not wanting to testify at trial, in the following exchange:

Q (Counsel): Now, again, you made the record, you got up in front of Judge Schieber and said you didn't want to testify. You agree that you said that?

A: Yes, ma'am.

Q: Was that the truth?

A: No, it was not.

Q: Why did you not tell the Judge the truth?

A: Because [trial counsel] told me that the Judge was -- that Judge Schieber was going to call me up here. She told me what he was going to ask me and what he was going to say to me. And she said that what he was saying, it really wasn't nothing, that I shouldn't -- it's not -- I'm not -- it's not going to help me to get up here, because of my priors and because Judge Schieber is going to -- he's going to look at my past and see that I -- that's how she basically put it.

Q: You kind of cut off there. See that what? That you had priors?

A: That I had priors and that I just got out of jail on a murder.

Mr. Simpson further stated that trial counsel did not explain to him that he had a right to testify, and that he felt that trial counsel talked him out of the decision to testify. He stated that, but for counsel's actions, he would have testified.

Trial counsel provided the following testimony about her first discussion with Mr. Simpson about whether he would testify at trial:

We spoke at the Jackson County Jail when we started talking about preparing the case for trial and the fact that certain witnesses were unavailable and whether or not it would be necessary for him to testify in light of that. He had been adamant all along that he did not want to testify unless it was absolutely necessary.

11

> I advised him that I didn't think it was necessary for him to testify and that his prior conviction would come out if he did testify. And he stated that he did not want to testify, that he only wanted to testify if it was absolutely necessary. I again told him I didn't think it was necessary for him to testify, but that it was his decision. And he said he didn't want to testify.
>
> Trial counsel further stated that she again spoke to Mr. Simpson during the trial about testifying. Counsel stated that Mr. Simpson "said he didn't want to testify." Trial counsel stated that Mr. Simpson asked her whether she needed him to testify, to which she responded in the negative; however, she also stated that she told him that it was "up to [him] if [he] want[ed] to. And then he said he didn't want to."
>
> Ultimately, trial counsel concluded that they "had a lengthy discussion . . . about his right to testify and his desire not to testify."
>
> Here, the record supports a finding that the trial court fully explained to Mr. Simpson that he had the right to testify, and he declined more than once. Similarly, the record shows that trial counsel made a reasonable decision of trial strategy when she advised Mr. Simpson that a prior conviction would surface if he testified. She also clearly and repeatedly advised him that it was his choice whether to do so. Nothing in the record indicates that trial counsel's performance was unreasonable, ineffective, or incompetent. Nor does the record indicate that Mr. Simpson could not have testified if he so chose. His current assertions to the contrary are implausible. Because Mr. Simpson has failed to establish deficient performance of counsel, we need not consider whether he was prejudiced. Accordingly, the motion court did not err in overruling the amended motion. Mr. Simpson's sole point is denied.

Doc. 9-9, pp. 4-9 (alterations added).

In holding that Petitioner's claims of ineffective assistance of trial counsel did not merit post-conviction relief, the state appellate court identified and applied reasonably the *Strickland* standard. Doc. 9-9, pp. 4-9. Petitioner fails to establish that it was unreasonable for the state appellate court to find that trial counsel properly advised Petitioner of his right to testify and the potential consequences were he to testify in his own defense. Insofar as the motion court found that trial counsel was credible and that Petitioner lacked credibility, credibility determinations are left for the state court to decide. *Graham*, 728 F.2d at 1540.

Because the state courts' determinations as to Ground 2 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 2 will be denied.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

    /s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: November 17, 2015.